**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | |
|---|---|
| **CAREY CREELMAN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 2:17-CV-00090-NCC** |
| ) | |
| **NANCY A. BERRYHILL,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

<u>**MEMORANDUM AND ORDER**</u>

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision

of the Commissioner denying the application of Carey Creelman ("Plaintiff") for Supplemental

Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.*

and for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C.

§§ 401, *et seq.* Plaintiff filed a brief in support of the Complaint (Doc. 25), and Defendant filed

a brief in support of the Answer (Doc. 30). The parties have consented to the jurisdiction of the

undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 10).

**I. PROCEDURAL HISTORY**

Plaintiff filed his applications for DIB and SSI on April 21, 2014 (Tr. 83–89, 181–86).

Plaintiff was initially denied on July 16, 2014, and he filed a Request for Hearing before an

Administrative Law Judge ("ALJ") (Tr. 125–29, 133–35). After a hearing, by decision dated

November 25, 2016, the ALJ found Plaintiff not disabled (Tr. 64–82). On October 18, 2017, the

Appeals Council denied Plaintiff's request for review (Tr. 55–63). As such, the ALJ's decision

stands as the final decision of the Commissioner.

## II.  DECISION OF THE ALJ

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since April 1, 2012, the alleged onset date (Tr. 66).  The ALJ further found Plaintiff has the severe impairments of degenerative disc disease, osteoarthritis, obesity, sleep apnea, gastroesophageal reflux disease ("GERD"), major depressive disorder, and substance abuse addiction by history, but the ALJ found that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 66–67).

After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work[1] with the following limitations (Tr. 68).  He can only occasionally climb ladders, ropes or scaffolds, and ramps or stairs (*Id*.).  He can only occasionally balance, stoop, kneel, crouch, and crawl (*Id*.).  Plaintiff is able to perform simple, routine tasks in a work environment free of fast-paced productivity requirements, involving simple work-related decisions with few workplace changes (*Id*.).  He is able to occasionally interact with the general public and can frequently interact with coworkers and supervisors (*Id*.).

The ALJ found Plaintiff unable to perform any past relevant work but that there are jobs that exist in significant numbers in the national economy Plaintiff can perform including housekeeper, injection molder, and hand presser in the laundry industry (Tr. 73–74).  Thus, the

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. §§ 416.967(b), 404.1567.

ALJ concluded Plaintiff is not disabled (Tr. 74). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision (Doc. 25).

## III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590–91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430–31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to

establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to

support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff raises two issues. First, Plaintiff broadly asserts the ALJ's RFC is conclusory and not supported by substantial evidence (Doc. 25 at 3). Specifically, Plaintiff argues the ALJ improperly concluded Plaintiff was limited to light work, which Plaintiff argues is inconsistent with medical evidence and Plaintiff's allegations of physical pain (*see id*. at 3–6). Second, Plaintiff argues the ALJ failed to conduct a proper evaluation of Plaintiff's physical pain (*see id*. at 6–7). For the following reasons, the Court finds

that Plaintiff's arguments are without merit and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.[2]

## A. Evaluation of Plaintiff's Subjective Complaints of Physical Pain

The Court will first consider the ALJ's evaluation Plaintiff's subjective complaints,[3] as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including Plaintiff's RFC. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005)); 416.945 (2010). In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001).

---

[2] Plaintiff alleges disability based on both mental and physical limitations (Tr. 30–39, 113, 201). However, while Plaintiff first broadly asserts the RFC is conclusory and not supported by substantial evidence, Plaintiff only raises arguments regarding the ALJ's RFC relating to Plaintiff's alleged physical limitations (Doc. 25 at 3–6). Moreover, in the second issue raised, Plaintiff's arguments solely relate to Plaintiff's allegations of pain from his physical limitations (*Id*. at 6–7). Since Plaintiff does not specifically challenge the ALJ's determination regarding Plaintiff's mental limitations and focuses solely on physical limitations in the arguments, the Court's decision will be similarly limited to the arguments raised in Plaintiff's brief. The Court will only summarize those portions of the ALJ's decision and the evidence that bear on the issues presented by this case.

[3] Social Security Ruling 16-3p eliminated the term "credibility" from the analysis of subjective complaints. However, the regulations remain unchanged; "Our regulations on evaluating symptoms are unchanged." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929.

"If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the Court finds that the reasons offered by the ALJ in support of her credibility determination are based on substantial evidence.

The ALJ began by discussing Plaintiff's subjective physical complaints, including limitations on his ability to lift, walk, sit, stand, and perform postural tasks, and Plaintiff's complaints of pain following activity (Tr. 69).[4] However, the ALJ expressly found Plaintiff's complaints of pain and limitations only partially credible, concluding "the claimant's statements concerning the intensity, persistence and limiting effects of [Plaintiff's] symptoms are not entirely consistent with the medical evidence and other evidence in the record" (Tr. 69). Contrary to Plaintiff's assertion, the ALJ considered Plaintiff's subjective complaints of pain and found them not credible. *See Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006).

First, the ALJ reviewed the objective medical the objective medical evidence of record and determined it failed to support the severity of Plaintiff's alleged symptoms. Specifically, the ALJ found that "[t]he objective medical evidence . . . did not support the extent of the claimant's allegations" (Tr. 69). The ALJ referred to multiple objective measures during the relevant period to explain why she found Plaintiff's physical condition not disabling. Her review included findings of relatively normal clinical signs and diagnostic testing. For example, the ALJ noted that while Plaintiff had deficits in his back such as bulging discs, he had only mild stenosis that "[did] not appear significant" on imaging in a May 2014 lumbar CT scan taken the month after

---

[4] In his disability application, Plaintiff claims he became disabled to lower-back and left-knee impairments, a head injury, and emotional issues (*see* Tr. 113).

Plaintiff filed his disability claim (Tr. 70, 71, 335–36). The findings in this CT scan were consistent with other CT scans and MRIs completed in 2014, 2015, and 2016 (Tr. 288–91, 1691, 1706, 1901, 2060). In fact, while a 2016 MRI of the lumbar spine demonstrated some abnormalities including herniated discs, there was mild stenosis and mostly normal spacing (Tr. 2060). And one neurologist opined in 2015 that the "MRI findings were not significant enough to cause symptoms as described by [Plaintiff]" (Tr. 1691, 1697, 1706). While Plaintiff also argues the ALJ failed to take compression of the thecal sac into consideration when evaluating Plaintiff's back pain (Doc. 25 at 7), a neurologist opined there was "no significant thecal sac compromise anywhere" after reviewing MRI findings suggestive of such compression (Tr. 371). Contrary to Plaintiff's assertion, the ALJ also considered the neuropathy noted in a March 2015 neurological study but reasonably discredited those complaints because of otherwise normal findings discussed below (Tr. 70, 1699–1701).[5]

The Court further finds that Plaintiff's arguments regarding headaches/head pain, neck pain, and right hand pain resulting from a 2011 work-related injury are also without merit, as those complaints are contradicted by the objective medical evidence (Doc. 25 at 7). For example, an examination within months of the work injury demonstrated normal neck findings, and examinations from 2013 through 2016 consistently demonstrated a lack of head/neck complaints and otherwise normal clinical findings (Tr. 1179, 1253–55, 1317, 1694, 2057). Furthermore, a March 2015 CT of Plaintiff's head demonstrated normal findings, despite

_____

[5] As previously noted, Plaintiff also claims disability based on a left knee impairment (Tr. 113). Plaintiff raises no specific challenge to the ALJ's findings regarding Plaintiff's alleged knee impairment and related pain (Doc. 25). Nonetheless, the Court finds the ALJ appropriately discredited Plaintiff's knee pain. For example, Plaintiff's complaints regarding his knee were notably infrequent until his March 2016 single-car motor vehicle accident that resulted in an acute injury to his meniscus, and the ALJ noted Plaintiff was able to ambulate despite these findings (Tr. 71, 1843, 1846, 1849). As of June 2016, Plaintiff was observed to be ambulating normally (Tr. 2021).

Plaintiff's complaint of neck pain (Tr. 292). And a review of the entire record demonstrates a notable absence of complaints regarding Plaintiff's hand. An ALJ is not required to discuss alleged impairments not found credible. *See Craig v. Apfel,* 212 F.3d 433, 436 (8th Cir. 2000) (holding "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."); *Brewer v. Colvin*, No. 4:14-CV-0148-TCM, 2015 WL 94534, at *14 (E.D. Mo. Jan. 7, 2015) (citing *Depover v. Barnhart,* 349 F.3d 563, 567 (8th Cir. 2003) and *Renstrom v. Astrue,* 680 F.3d 1057, 1065 (8th Cir. 2012)) (holding "an ALJ who specifically addresses the areas in which he found a limitation but is silent as to those areas in which no limitation is found is believed to have implicitly found no limitation in the latter.") The ALJ noted she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" (Tr. 68). Therefore, any alleged error by the ALJ in failing to discuss such complaints is harmless, as the ALJ's decision enjoys substantial support in the record as a whole for the reasons discussed throughout this section. *See Pearsall*, 274 F.3d at 1218 ("Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole."); *see also Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (noting that an error is harmless unless the ALJ would have decided the case differently).

The ALJ continued her analysis of the objective medical evidence by detailing the relatively normal clinical findings throughout the record including findings of normal gait, normal range of motion in Plaintiff's back and extremities, and normal ambulation (Tr. 67, 70, 72, 1320–21, 1657–61, 1684–87, 1847, 2000). In 2015, for example, Plaintiff reported ambulating, sitting, standing, bending, and engaging in activities of daily living independently with no weight-bearing restrictions (Tr. 1606). *See also* Tr. 371–72 (July 2014 neurology

consult, "able to stand up on heels and toes without difficulty," "full motor power in hips, quads, hamstrings, feet"); Tr. 1317 (September 2014 treating physician, "denies . . . walking aids [or] limitation of use of any joint, including back"); Tr. 1478–81 (October 2015, "He doesn't appear to be in any physical distress, walks normally"); Tr. 2021, 2057 (June 2016, observed ambulating, gait and station normal, normal range of motion in neck, back, extremities).  In sum, an ALJ may determine that "subjective pain complaints are not credible in light of objective medical evidence to the contrary," as the ALJ reasonably did so here.  *Gonzales*, 465 F.3d at 895.

Second, the ALJ found that "the largely conservative management of claimant's conditions did not support the extent of the claimant's allegations" (Tr. 69, 70, 71, 73).  For example, as discussed above, the ALJ cited substantial evidence in the record demonstrating Plaintiff ambulated normally without assistive devices (Tr. 67, 70–73).  Moreover, the ALJ noted a neurologist recommended that Plaintiff's back pain from his degenerative disc disease be treated with medication, physical therapy, exercise, and weight loss, and he specifically recommended against any type of surgical intervention (Tr. 70, 371–72).  While Plaintiff argues the neurologist's record did not go the further step of stating that Plaintiff's pain is not severe (Doc. 25 at 4), an ALJ may properly consider Plaintiff's conservative treatment history in her determination of a plaintiff's credibility.  *See, e.g.*, *Kamann v. Colvin*, 721 F.3d 945, 950–51 (8th Cir. 2012); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (conservative course of treatment supported ALJ's decision to discredit subjective complaints of pain).  Furthermore, while Plaintiff argues he was not a candidate for less invasive injection treatments because he was on Coumadin for his deep vein thrombosis ("DVT") (Doc. 25 at 5; Tr. 1328), other records cited by

the ALJ suggest Plaintiff was a candidate for injections and did receive one but preferred narcotics (Tr. 70, 1671, 1676, 1683, 2000).[6]

Third, the ALJ noted that treatment helped control Plaintiff's conditions (Tr. 70, 71). For example, the ALJ noted Plaintiff was ambulatory and stable when treated with anticoagulation therapy for the leg pain and edema related to his DVTs (Tr. 70, 349, 355, 360–64, 1752, 1911). A treating physician found Plaintiff's left leg "much improved" and Plaintiff reported improvement in his pain after treatment with medication (Tr. 344, 351). Plaintiff also reported medication was working well for his back pain (Tr. 1343, 1818). *See Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016) (evidence of relief from medication supports ALJ's findings that complaints were not fully credible); *Renstrom*, 680 F.3d at 1066 (conditions which can be controlled by treatment are not disabling); *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009) ("Impairments that are controllable or amenable to treatment do not support a finding of disability."); *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009); *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007); *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("Evidence of effective medication resulting in relief . . . may diminish the credibility of a claimant's

---

[6] Plaintiff argues he did not receive physical therapy due to lack of medical coverage by Medicaid (Doc. 25 at 4–5; Tr. 1328). In some circumstances, failure to seek medical treatment based on inadequate financial resources may explain a plaintiff's failure. *See Johnson v. Bowen*, 866 F.2d 274, 275 (8th Cir. 1989). In this matter, however, the record does not reflect that Plaintiff sought out any additional options for physical therapy that may have been offered to those who are indigent, including looking into low cost or free inpatient facilities in the various areas in which he lived. *Cf. Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (holding that, despite a plaintiff's argument that he was unable to afford prescription pain medication, an ALJ may discredit complaints of disabling pain where there is no evidence that the claimant sought treatment available to indigents or chose to forego smoking to help finance treatment); *McGee v. Astrue*, No. 4:09CV1011MLM, 2010 WL 2835660, at *9 (E.D. Mo. July 15, 2010) (plaintiff did not seek assistance in paying for physical therapy). Regardless, this is just one factor of many that the ALJ considered in her decision.

complaints."); *Wildman*, 596 F.3d at 965 n.3 (ALJ may properly consider that pain is "fairly," though not completely, under control when the plaintiff is compliant with medication).

Fourth, the ALJ reasonably noted Plaintiff did not always comply with suggested treatment (Tr. 70, 71). For example, the ALJ noted Plaintiff was advised to lose weight to alleviate his back pain but remained obese (Tr. 28, 70, 201, 371–72, 1828). The ALJ noted that Plaintiff, who had a history of intravenous cocaine abuse and alcohol addiction, tested positive for amphetamine in 2016 during a hospital visit while he was jailed and charged with stealing (Tr. 36, 71, 374, 1686, 2016–17). A review of the records reveals additional examples of non-compliance. For instance, in 2012 and 2013, a physician repeatedly noted that a patient goal for Plaintiff was "taking medications as directed" (*see*, *e.g.*, Tr. 1258, 1265). Additional records from 2012 through 2016 demonstrate Plaintiff was non-compliant at times in taking medication for his leg-related DVTs, in taking pain medication or timely following up with his doctors for such medication, and in following his sleep apnea regimen (Tr. 363, 1253, 1343, 1757, 2058). Moreover, Plaintiff, who had tongue cancer requiring surgery at one point, was counseled to stop smoking because it interfered with the "mechanisms of rehabilitation and healing that are necessary for pain relief," but he continued to smoke one pack per day (Tr. 35, 367, 1660, 1987). A "failure to follow [a] recommended course of treatment [ ] weighs against a claimant's credibility." *Guilliams*, 393 F.3d at 802 (citing *Gowell v. Apfel*, 242 F.3d 793, 797 (8th Cir. 2001)). *See also Wildman*, 596 F.3d at 968–69 (it is permissible for ALJ to consider claimant's non-compliance with prescribed medical treatment).

Fifth, inconsistencies between Plaintiff's subjective complaints of disabling pain and evidence concerning his daily living activities also impacted Plaintiff's credibility. For example, the ALJ noted Plaintiff testified he had disabling physical limitations including problems lifting,

-12-

walking, sitting, standing, and performing postural tasks (Tr. 69).  However, the ALJ also noted

Plaintiff reported socializing with friends and family, driving, shopping for a few hours at a time,

doing chores, helping care for his mother suffering from Alzheimer's disease, helping his

disabled girlfriend care for her father, playing guitar, and using a computer (Tr. 67, 68, 69).  The

ALJ further explained Plaintiff testified that despite experiencing pain afterwards, he could move

furniture and mow the lawn (Tr. 69).  Plaintiff reported additional activities on his Function

Report, including watching movies with friends and going to friends' houses on a regular basis,

doing laundry, making meals, seeking employment, doing some cleaning, going outside daily,

driving daily, and going to church on a regular basis (Tr. 212–15, 1809).

Furthermore, upon review of the medical records, although Plaintiff reported not

engaging in physical activities due to pain, a neurologist who Plaintiff consulted for pain in 2014

counseled him to engage in physical exercise and strengthen his core musculature, and a treating

physician recommended daily exercise for Plaintiff in 2015 (Tr. 371–72, 1820, 1828).  *See

Pelkey v. Barnhart*, 433 F.3d 575, 579 (8th Cir. 2006) (affirming ALJ's credibility determination

based in part on claimant's doctors having recommended exercise and medication but not

surgery).  Plaintiff also reported exercising three times per day, engaging in outdoor activities for

leisure, barbequing, and taking trips or traveling (Tr. 357, 1608, 1609, 1658).  Moreover,

Plaintiff was kicked by a horse and was hit in the head by a post when helping put up a fence

during the disability period. (Tr. 296, 306).  He also reported his physical activities had "fallen

off" in part due to finances (Tr. 1283).  Taken in combination, the noted activities undermined

Plaintiff's credibility and provide substantial support for the ALJ's decision when considered in

combination with the other factors.  *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017)

("[t]he inconsistency between [the claimant's] subjective complaints and evidence regarding her

activities of daily living also raised legitimate concerns about her credibility"); *Bernard v. Colvin,* 774 F.3d 482, 489 (8th Cir. 2014) (quoting *Johnson v. Apfel,* 240 F.3d 1145, 1148 (8th Cir. 2001)) ("'Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.'"); *Ponder v. Colvin*, 770 F.3d 1190, 1195 (8th Cir. 2014) (finding the plaintiff's reported ability to perform light housework, cook, do laundry, shop, watch TV, drive, leave the house alone, and regularly attend church "undermines her assertion of total disability").

Sixth, the ALJ found that although Plaintiff spent much of the time prior to the filing date incarcerated,[7] his limited work history even post-incarceration "suggests factors other than mental or physical limitations that prevented past employment continue to prevent him from currently working" (Tr. 69). *See Bernard*, 774 F.3d at 489 (sporadic work history may properly be considered in ALJ's credibility assessment). The ALJ explained that "there was no indication of an increase in severity of his symptoms in the objective medical evidence after the application date that would be consistent with this allegation" (Tr. 69). Included in the administrative record were voluminous medical records from Plaintiff's incarceration. These records demonstrated, among other things, that Plaintiff complained of intermittent back pain for 30 years and had a long history of DVTs in his legs (Tr. 1007, 1037, 1089). Despite this, he was able to work some while incarcerated, and he was a baker and forklift operator for a short period of time after being released, both of which were physically demanding by Plaintiff's own reports in his disability application (202, 226–28, 265). Plaintiff's additional employment-related actions during the disability period were inconsistent with total disability. For example, although he reported on a

---

[7] As background, Plaintiff was incarcerated in the Nebraska department of corrections from the early 1990s to his release in 2011, where he was serving a 24- to 73-year sentence for 5 counts of robbery and assault by a confined person (Tr. 24, 36, 484).

disability application form that he delivered phone books for just 3 to 4 days in 2014, he testified

that he performed this temporary work for approximately 2 years (Tr. 30, 265). In 2014, he also

reported looking for work, applying for 20 jobs, and contemplating starting his own cab

company (Tr. 1451, 1453). Even part-time work after the alleged onset date may be relevant to a

claimant's RFC determination. *See Toland v. Colvin*, 761 F.3d 931, 936 n.4 (8th Cir. 2014)

(citing *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005)).

Seventh, other inconsistencies in the record supported the ALJ's ultimate decision. *See

Pearsall*, 274 F.3d at 1218 ("Subjective complaints may be discounted if there are

inconsistencies in the evidence as a whole."). For example, Plaintiff testified and his counsel

represents that he suffered a head injury from a work-related accident in late 2011 (Doc. 25 at 7,

32). However, when trying to obtain additional pain medication, Plaintiff often told providers

that his back pain and left knee pain resulted from this same work injury (*see*, *e.g.*, Tr. 1475,

1818, 1849, 1905). This is inconsistent with the records and Plaintiff's own testimony regarding

his work injury (Tr. 32, 1178, 1184). *See Julin*, 826 F.3d at 1087 ("Contradictory statements that

[the plaintiff] made to treating physicians are yet another reason to discount her credibility").

While Plaintiff told many providers about his history of substance abuse, Plaintiff also repeatedly

denied any history of drug or alcohol at times to some of his pain medication providers (Tr.

1321, 1327, 1332, 1349, 1658, 1664). He told another pain doctor in 2015 that he uses a cane, a

walker, and a wheelchair to assist in transportation and needs another person to assist him while

walking, though substantial evidence in the administrative record and Plaintiff's own testimony

at the hearing contradicts this statement (Tr. 1658). In fact, during an October 2015 hospital stay

after Plaintiff overdosed on pain medication in an attempted suicide, Plaintiff stated he had stress

issues after a move, and a doctor opined, "He doesn't appear in physical distress, walks

normally. . . . He says he overdosed because he couldn't get opiates for his chronic back pain.  I

suspect he has been using opiates to treat his emotional distress" (Tr. 1466, 1479–80, 1483).

Moreover, after being charged with the admitted theft of his ex-girlfriend's vehicle in 2013,

Plaintiff was again arrested for stealing in 2016, which resulted in a hospital stay because

Plaintiff reported hallucinations (Tr. 320, 2013).  During this hospital stay, Plaintiff's fiancé

reported that "she believes [Plaintiff] may be making up a story to avoid jail time" and that once

his bond was taken care of, she thought he might "change his story" (Tr. 2013).  *See Julin*, 826

F.3d at 1087–88 (discussing evidence in the record "from which the ALJ could infer [the

plaintiff's] claims were overstated or not entirely reliable").

Plaintiff maintains the ALJ's decision was improper, arguing that the ALJ only addressed

Plaintiff's work history and "fail[ed] to discuss the remainder of the *Polaski* factors" (Doc. 25 at

7).  However, Plaintiff's position misstates the law of this Circuit.  *See Tucker v. Barnhart*, 363

F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as

the analytical framework is recognized and considered.").  The ALJ cited specifically to the

governing Regulations for evaluating symptoms and then considered a variety of factors beyond

Plaintiff's work history, as noted above, in discussing pain throughout her decision (Tr. 68–73).

*See also* 20 C.F.R. §§ 404.1529, 416.929; *Bryant v. Colvin*, 861 F.3d 779, 783 (8th Cir. 2017)

(ALJ may properly consider inconsistencies between subjective complaints, personal history, and

the medical record).

For the reasons discussed, the Court finds the ALJ's credibility determination is based on

substantial evidence and is consistent with Regulations and case law.

**B. RFC**

The Regulations define RFC as "what [the claimant] can do" despite his "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker*, 363 F.3d at 783 (8th Cir. 2004) (quoting *McKinney*, 228 F.3d at 863). *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his impairments. *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). "Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (internal citations omitted).

A "claimant's residual functional capacity is a medical question." *Lauer*, 245 F.3d at 704 (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in *Lauer* that "[s]ome medical evidence . . . must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace[.]" 245 F.3d at 704 (quoting *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam) and *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)); *see also Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); *Eichelberger*, 390 F.3d at 591. However, there is no

requirement that an RFC determination be supported by a specific medical opinion or that an RFC must be linked in each of its components to a specific medical opinion. *Hensley v. Colvin*, 829 F.3d 926, 931–32 (8th Cir. 2016); *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). Here, Plaintiff asserts the ALJ's RFC is conclusory and not supported by substantial evidence, arguing specifically that the ALJ improperly concluded Plaintiff was limited to light work with limitations (Doc. 25 at 3–6). Plaintiff argues this conclusion is inconsistent with medical evidence and Plaintiff's allegations of physical pain, particularly his back pain (*Id.*). However, the Court finds that the ALJ's RFC determination was based on substantial evidence.

In formulating her RFC, the ALJ addressed the medical opinion evidence of record and reasonably gave little weight to two opinions relating to Plaintiff's physical impairments, concluding they were "not consistent with the record as a whole" (Tr. 72). First, James Wilkerson, M.D., opined in April 2012 that Plaintiff was "unable to work" until he could be seen by a neurologist (Tr. 72, 1182). The ALJ explained that the issue of disability is a determination reserved to the Commissioner, and Dr. Wilkerson's opinion was not consistent with subsequent physical exams noting many normal findings (*Id.*). *See Blackburn v. Colvin*, 761 F.3d 853, 860 (8th Cir. 2014) (opinion not entitled to controlling weight when inconsistent with other substantial evidence in record); *Ellis v. Barnhart,* 392 F.3d 988, 994 (8th Cir. 2005) ("A medical source opinion that an applicant is 'disabled' or 'unable to work' . . . involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight."). Second, neurologist David Peeples, M.D., evaluated Plaintiff later in April 2012 and concluded Plaintiff "could work without restriction and has no disability" (Tr. 72, 1183–1186). The ALJ explained this completely unrestricted opinion was not supported by the imaging showing degenerative changes in Plaintiff's lumbar spine and deficits

on exam (Tr. 72).  As a result, the ALJ incorporated some postural limitations into her RFC (Tr. 68).

In challenging the RFC, Plaintiff states in conclusory fashion that the ALJ improperly "relied on the opinions of non-treating, non-examining medical consultants" (Doc. 25 at 3). However, Plaintiff fails to identify any consultant by name (*see id*.).  The only consultant in this case was a state agency psychological consultant, Joan Singer, Ph.D. (Tr. 113–119).[8]  Plaintiff neither raises any issues regarding Plaintiff's mental health impairments nor identifies any error with respect to the ALJ's decision to give great weight to Dr. Singer's opinion.[9]  Therefore, Plaintiff's argument on this point is without merit.

Plaintiff's brief argument suggesting the ALJ improperly formed her "own opinion based on the medical evidence instead of relying on the opinions of treating sources" is also without merit (Doc. 25 at 6).  Plaintiff fails identify any treating physician opinion upon which the ALJ should have relied or articulate why the ALJ should have otherwise relied upon a particular treating source (*see id*.).  In fact, a review of the administrative records demonstrates Plaintiff moved around and changed doctors with some frequency, including multiple instances where Plaintiff tried to establish care with a new doctor including for pain medication or pain management referral but then returned to that doctor for only a short time (*see*, *e.g.*, Tr. 1817–30; 2000–2007).

---

[8]  A single decision maker also reviewed Plaintiff's case (Tr. 113–119).  Plaintiff implies the ALJ erroneously relied on the single decision maker's opinion in formulating her RFC (see Doc. 25 at 6).  However, in weighing the opinion evidence, the ALJ specifically stated, "The undersigned has not considered the opinion of the State agency single decision maker per Agency policy" (Tr. 72).

[9]  Because Plaintiff raises no issues regarding Plaintiff's mental health impairments (*see generally* Doc. 25), the Court will not address Dr. Singer's opinion or other opinions the ALJ discussed regarding Plaintiff's mental impairments (Tr. 72–73).  The Court will only address opinions relating to Plaintiff's physical impairments.

The Court finds substantial evidence in the record to support the ALJ's finding that Plaintiff was physically capable of a limited range of light work. While Plaintiff argues the ALJ's RFC finding was conclusory, unsupported, and unexplained, the ALJ provided a detailed explanation of her decision (Tr. 71–72). For example, the ALJ explained a finding of light work was warranted because of mild MRI findings and conservative management of Plaintiff's condition without a need for surgery or the use of other assistive devices (Tr. 72, 73). The ALJ further explained that while the nature of Plaintiff's conditions suggested a limitation to light work, the generally normal physical examinations, including a normal gait on most exams, did not suggest greater limitations than light work (*Id.*). Furthermore, because Plaintiff had limited range of motion at times, the ALJ included postural limitations (Tr. 72). However, the ALJ found that the mostly normal physical examinations did not suggest any additional postural or non-exertional limitations were required (Tr. 72). In sum, the ALJ concluded that "[w]hile the findings during this period suggest some vocational limitations, the findings and conservative management do not suggest greater limitation than" the limitations included in the RFC (Tr. 70–71).

Plaintiff suggests the ALJ improperly drew inferences from the medical records in concluding Plaintiff's physical condition was generally managed conservatively without the need for surgery or use of an assistive device (Doc. 25 at 3). However, as addressed in significant detail above, the ALJ properly addressed Plaintiff's credibility and in doing so, conducted an appropriate analysis of Plaintiff's medical record, activities of daily living, and work history. *See Wildman*, 596 F.3d at 969; *Julin*, 826 F.3d at 1086 (the ALJ's decision to discount the plaintiff's credibility is interrelated to and influences the RFC). *See also Fentress v. Berryhill*, 854 F.3d 1016, 1020–21 (8th Cir. 2017) (ALJ appropriately relied on normal motion, strength,

muscle, gait, and strength findings, evidence suggesting symptoms were controlled when the plaintiff was compliant, and daily activities when formulating the RFC).

Therefore, contrary to Plaintiff's position, the Court finds the ALJ properly supported and explained her position and did in fact cite to specific medical facts and non-medical evidence throughout her decision (Doc. 25 at 6). Plaintiff seems to suggest the ALJ should have separately delineated specific evidence supporting each and every individual component of her RFC in detail (*see* Doc. 25 at 6). However, the law does not demand what Plaintiff so desires. An ALJ is not required to list each function that she includes in a claimant's RFC, followed by the specific medical evidence which supports a finding that the claimant can or cannot engage in that precise function. *See Wildman*, 596 F.3d at 966 ("[A]n ALJ's failure to cite specific evidence does not indicate such evidence was not considered."); *Davis v. Colvin*, No. 14-05075, 2015 WL 1964791, at *5 (W.D. Mo. May 1, 2015) ("SSR 96-8P does not require an ALJ to list each RFC limitation followed by the specific evidence that supports it; such a requirement would undermine the 'all relevant evidence' standard and would result in duplicative discussions of the same evidence."); *Peterson v. Colvin*, No. 13-0329-CV-W-ODS, 2013 WL 6237868, at *4 (W.D. Mo. Dec. 3, 2013) ("Plaintiff overstates the law by contending there must be medical evidence that precisely supports each component of the RFC"); *Hilgart v. Colvin*, No. 6:12-03022-DGK-SSA, 2013 WL 2250877, at *4 (W.D. Mo. May 22, 2013) (citing *McKinney*, 228 F.3d at 863) (requiring ALJ "to follow each RFC limitation with a list of specific evidence on which the ALJ relied" is inconsistent with "all of the relevant evidence" standard and not required by SSR 96-8). For the reasons discussed throughout this opinion, the Court therefore finds the ALJ provided an appropriate narrative statement in support of her decision. *See Swain v. Berryhill*, No. 4:16-CV-00326-JAR, 2017 WL 2132479, at *6 (E.D. Mo. May 17, 2017) (rejecting

argument that the ALJ failed to provide appropriate narrative statement explaining how medical evidence supported her RFC of light work with limitations because ALJ not required to follow each RFC limitation with list of specific evidence on which the ALJ relied).

In addition, the Court rejects any suggestion by Plaintiff that the ALJ should have further developed record beyond the approximately 1800-plus pages of medical records in this case (*see* Doc. 25 at 5). Plaintiff articulates no basis for this suggestion, and the Court finds there was sufficient medical evidence for the ALJ to determine Plaintiff's RFC. *See Hensley*, 829 F.3d at 932 (citations omitted) ("[T]here is no requirement that an RFC finding be supported by a specific medical opinion"); *Buford*, 824 F.3d at 796–97 (internal citations omitted) (holding "[a]lthough it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC," and noting the ALJ's duty to develop the record does not include the obligation to disprove every possible impairment); *Kamann*, 721 F.3d at 950 (internal quotations and citations omitted) (holding the plaintiff bears ultimate burden of proving disability and providing medical evidence as to severity of impairments and "[p]ast this point, an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision."); *Hovis v. Colvin*, No. 1:15-CV-00073 JMB, 2016 WL 4158867, at *13 (E.D. Mo. Aug. 5, 2016) (ALJ under no duty to further develop record when existing records provided sufficient basis for ALJ's decision).

Finally, to the extent Plaintiff identifies records that support Plaintiff's allegations, "[i]f substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence and even if we may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). *See also Fentress*, 854 F.3d

at 1021 ("While it is not surprising that, in an administrative record which exceeds 1,500 pages, [plaintiff] can point to some evidence which detracts from the Commissioner's determination, good reasons and substantial evidence on the record as a whole support" the Commissioner's decision); *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) ("We may not reverse simply because we would have reached a different conclusion than the ALJ or because substantial evidence supports a contrary conclusion"); *Goff*, 421 F.3d at 789 ("If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision"); *Delmater v. Berryhill*, No. 2:16-CV-70-SPM, 2018 WL 1508868, at *10 (E.D. Mo. Mar. 27, 2018) (court must defer to ALJ's credibility determination when supported by substantial evidence even if there is "significant evidence" in record supporting subjective complaints of pain).

In conclusion, after reviewing the evidence and considering objective results and findings, Plaintiff's subjective reports and complaints of pain, and opinion evidence, the ALJ concluded Plaintiff was able to perform light work, with limitations. The ALJ "did not simply adopt a light work RFC wholesale, but rather restricted [Plaintiff's] RFC based on [her] credible limitations of record." *Fentress*, 854 F.3d at 1021. For these reasons, the ALJ's decision was based on substantial evidence and was "within the zone of choice." *See id*. Plaintiff's arguments to the contrary are without merit.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and

Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 22nd day of March, 2019.

                                     /s/ Noelle C. Collins
                                  NOELLE C. COLLINS
                                  UNITED STATES MAGISTRATE JUDGE